[S.F. No. 23938. Aug. 13, 1979.]

CALIFORNIA HOTEL AND MOTEL ASSOCIATION et al.,
Plaintiffs and Appellants, v.
INDUSTRIAL WELFARE COMMISSION et al.,
Defendants and Respondents.

## COUNSEL

William K. Coblentz, Jacob, Sills & Coblentz, Jerome B. Falk, Jr., Dirk M. Schenkkan and Howard, Prim, Rice, Nemerovski, Canady & Pollak for Plaintiffs and Appellants.

Brobeck, Phleger & Harrison, Jean C. Gaskill, James L. Meeder, Littler, Mendelson, Fastiff & Tichy, Robert F. Millman, Lloyd Aubry, Jr., Mitchell, Silberberg & Knupp, Richard Mosk, Kahn & Farley and Jan L. Kahn as Amici Curiae on behalf of Plaintiffs and Appellants.

Evelle J. Younger and George Deukmejian, Attorneys General, and Carol Hunter, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**THE COURT.**[*]—The California Hotel and Motel Association and others (the association) appeal from a judgment denying the association's petition for a writ of mandate to invalidate Order 5-76 of the respondent Industrial Welfare Commission (the commission). Order 5-76 fixes wages, hours, and conditions of employment in the public housekeeping industry, which provides meals, lodging, and maintenance services to the public. The association argues that order 5-76 is invalid because the commission did not investigate and find that wages were inadequate or that the hours or working conditions were harmful to employees in the industry, as required by Labor Code section 1178.[1] We reject this argument. However, the association's further contention that Order 5-76 is invalid because the commission did not include an adequate statement of basis to support the order, as required by section 1177, is sound. We outline the purposes of a statement of basis, define the standard to test a statement of basis, and apply that standard to the documents in this case. We reverse the judgment and direct issuance of a writ guiding further action by the commission.[2]

---

[*]Before Clark, Acting C. J., Richardson, J., Newman, J., Lillie, J.,[†] Christian, J.,[†] Morris, J.,[†] and Reppy, J.[‡]

[1]All statutory references are to the Labor Code unless indicated otherwise.

[2]In light of our resolution of this appeal, we do not reach other contentions of the association that could be dealt with more appropriately on an administrative record that

[†]Assigned by the Acting Chairperson of the Judicial Council.

[‡]Retired Associate Justice of the Court of Appeal sitting under assignment by the Acting Chairperson of the Judicial Council.

The commission is an administrative body within the Division of Labor Standards Enforcement, consisting of five members appointed by the Governor.[3] The commission determines the wages, hours, and working conditions of all employees, except outside salesmen, in 15 industries.[4]

The association is a nonprofit corporation whose members are owners of hotels and motels in California, employers subject to Order 5-76.

During 1975 and 1976, the commission undertook the statutory procedures[5] to review and update regulations pertaining to wages, hours and working conditions of employees. During public hearings on the commission proposals,[6] the association presented a position paper commenting on the proposals relating to the public housekeeping industry. As a result of these proceedings, the commission adopted Order 5-76, which went into effect on October 18, 1976.[7] The association sought a writ of mandate (see Code Civ. Proc., §§ 1084-1094) challenging the validity of the order. The trial court found the order valid in all respects. This appeal followed.

includes an effective statement of basis. These include: (1) Whether the commission failed to heed the legislative mandate that it not cause undue hardship and employment loss when it promulgated Order 5-76. (2) Whether the commission violated the California Environmental Quality Act when it promulgated Order 5-76. (3) Whether federal labor law preempts Order 5-76 to the extent that the order regulates the terms of collective bargaining agreements. (4) Whether the commission violated the constitutional guarantees of due process and equal protection when it (a) exempted other industries from hour and working condition orders, but did not exempt the public housekeeping industry; (b) failed to distinguish between tipped and nontipped employees in fixing the minimum wages; or (c) reduced the straight-time workweek in the industry.

[3]See sections 70-74.

[4]Section 1171. See generally sections 1171-1204. The 15 industries are: 1. manufacturing; 2. personal service; 3. canning, freezing and preserving; 4. professional, technical, clerical, mechanical and the like; 5. public housekeeping; 6. laundry, linen supply and dry cleaning; 7. mercantile; 8. product handling after harvest (covering commercial packing sheds); 9. transportation; 10. amusement and recreation; 11. broadcasting; 12. motion picture; 13. preparation of agricultural products for market (on the farm); 14. agricultural; 15. household. (See Cal. Admin. Code, tit. 8, §§ 11008-11500.)

[5]See generally sections 1171-1204.

[6]See section 1178.

[7]The following is a summary of Order 5-76:

*Section 1. Applicability.*

*Section 2. Definitions.*

*Section 3. Hours and Days of Work.* No employee over 18 years may be employed more than 8 hours per day or 40 hours per week unless paid one and one-half the regular rate. With agreement of employer and two-thirds of employees, a workweek of 4 days

## The "Investigate and Find" Issue
### (*Labor Code Sections 1173 and 1178*)

■ The association argues that section 1178 requires the commission to investigate and find that wages are inadequate, or hours and conditions

and 10 hours per day may be used. Special hours in licensed care hospitals. A 54-hour/6-day week for child care personnel, camp counselors, and resident home managers may be used. Duration and periods of employment of minors are limited.

*Section 4. Minimum Wages.* The minimum wage is $2.50 per hour. The learners' rate is $2.15 for the first 160 hours in training. Minors are paid $2.15 an hour when not more than 25 percent of the employer's work force is made up of minors, except during school vacation. An additional $2.50 is payable to any employee who works a split shift. The minimum wage provisions do not apply to apprentices.

*Section 5. Reporting Time Pay.* An employee is to receive a specified minimum compensation when he is required to report to work but is not provided half the normal days' work, subject to exceptions.

*Section 6. Handicapped Workers.* Handicapped persons holding permits may be paid less than the minimum wage.

*Section 7. Records.* Records of hours, wages, and deductions must be kept.

*Section 8. Cash Shortage and Breakage.* Cash shortage and breakage are chargeable depending upon whether the employee has exclusive control over cash or equipment.

*Section 9. Uniforms and Equipment.* Required distinctive uniforms are to be provided and maintained by the employer. When the wage of the employee is less than double the minimum, necessary tools are to be provided by the employer, subject to deposit and return.

*Section 10. Meals and Lodging.* When meals or lodging or both are furnished by written agreement between employer and employee, there may be a credit against the minimum wage.

*Section 11. Meal Periods.* A meal period of 30 minutes per 5 hours of work is generally required.

*Section 12. Rest Periods.* A rest period of 10 minutes per 4 hours of work is generally authorized.

*Section 13. Change Rooms and Resting Facilities.* Change rooms and resting facilities are to be provided under circumstances specified.

*Section 14. Seats.* Seats are to be provided employees if the nature of the work reasonably permits their use.

*Section 15. Temperature.* Although temperatures are not strictly regulated, the comfort of workers requires that they occasionally have access to facilities regulated to 68 degrees Fahrenheit.

*Section 16. Elevators.* Elevators are to be provided where there are four or more floors.

*Section 17. Lifting.* Provision is made, without sex discrimination, for limitations on lifting.

*Section 18. Exemptions.* If undue hardship is shown by an employer, the Division of Enforcement may grant exemptions from record keeping, meal periods, rest periods, change rooms and resting facilities, seats, temperature, and elevator requirements.

*Section 19. Filing Reports.* Certain reports are required.

*Section 20. Inspection.* Division inspection is authorized.

*Section 21. Penalties.* Failure to comply is punishable by fine or imprisonment or both.

*Section 22. Separability.* Provisions of the order are severable in the event of unconstitutionality or invalidity.

*Section 23. Posting of Order.* Every employer is to post a copy of the order.

of employment are prejudicial to the health, morals, or welfare of employees, before selecting a wage board to consider any such matters.[8] According to the association, the commission did not so investigate and find before convening a wage board to consider such matters in the public housekeeping industry. The association contends that the resulting Order 5-76 is therefore invalid.

The history of the commission's statutory authority is relevant to resolve this issue. Prior to 1972, the commission had authority to determine the wages, hours, and working conditions of women and minors, but not of men. The Legislature extended the authority of the commission to determine the minimum wage for men in 1972[9] and the hours and working conditions for men in 1973.[10]

The Legislature in 1973 also mandated that the commission take immediate action to implement this extended authority. The Legislature amended section 1173, outlining the duties of the commission, to provide as follows: "No rules, regulations, or policies of the Industrial Welfare Commission existing on the effective date of the amendments to this

---

[8]Section 1178 provides: "If after investigation the commission finds that in any occupation, trade, or industry, the wages paid to employees are inadequate to supply the cost of proper living, or that the hours or conditions of labor are prejudicial to the health, morals, or welfare of employees, the commission shall select a wage board to consider any of such matters. Such wage board shall be composed of an equal number of representatives of employers and employees in the occupation, trade, or industry in question; and a representative of the commission to be designated by it, who shall act as chairman of the wage board on request of the commission. The wage board shall report and make recommendations to the commission, including therein:

"(a) An estimate of the minimum wage adequate to supply the necessary cost of proper living to, and maintain the health and welfare of employees engaged in the occupation, trade, or industry in question.

"(b) The number of hours of work per day in the occupation, trade, or industry in question, consistent with the health and welfare of employees.

"(c) The standard conditions of labor in the occupation, trade, or industry in question, demanded by the health and welfare of employees.

"Before promulgating an order relating to wages, hours, or conditions of labor for the occupation, trade, or industry in question, and after receipt of the report from the wage board, the commission shall prepare proposed regulations for the occupation, trade, or industry in question and then shall hold a public hearing. The proceedings shall be recorded and transcribed and shall thereafter be a matter of public record. Whenever the occupation, trade, or industry in question is statewide in scope, a public hearing shall be held in each of two cities in this state; when it is not statewide, a public hearing shall be held in the locality where the occupation, trade, or industry prevails."

[9]See Statutes 1972, chapter 1122, pages 2152-2157.

[10]See Statutes 1973, chapter 1007, pages 2001-2005.

section enacted at the 1973-1974 Regular Session[11] shall be extended or changed without review and hearings, upon proper notice, on the proposed changes. The commission shall forthwith undertake a full review, with hearings upon proper notice, of all such existing rules, regulations, and policies made under its jurisdiction. Such review shall be directed toward the end of accomplishing the objectives of this chapter, and updating such rules, regulations, and policies to the extent found by the commission to be necessary to provide adequate and reasonable wages, hours, and working conditions appropriate for all employees in the modern society. The commisson shall amend, repeal, or otherwise modify its rules, regulations, and policies in such manner as the commission, on the basis of such review, deems necessary to comply with the objectives of this chapter."[12]

These amendments, extending the authority of the commission and requiring full review of existing rules, regulations, and policies "forthwith," significantly increased the burdens on the commission. Prior to 1974, section 1182 required that the commission make an order fixing the wages, hours, or working conditions during the first three calendar

---

[11]The effective date was January 1, 1974. (Stats. 1973, p. A-5.)

[12]Statutes 1973, chapter 1007, section 1.5, amending section 1173. As amended, section 1173 provides in its entirety: "It shall be the continuing duty of the Industrial Welfare Commission, hereinafter referred to in this chapter as the commission, to ascertain the wages paid to all employees in this state, and to ascertain the hours and conditions of labor and employment in the various occupations, trades, and industries in which employees are employed in this state, and to investigate the comfort, health, safety, and welfare of such employees. No rules, regulations, or policies of the Industrial Welfare Commission existing on the effective date of the amendments to this section enacted at the 1973-74 Regular Session shall be extended or changed without review and hearings, upon proper notice, on the proposed changes. The commission shall forthwith undertake a full review, with hearings upon proper notice, of all such existing rules, regulations, and policies made under its jurisdiction. Such review shall be directed toward the end of accomplishing the objectives of this chapter, and updating such rules, regulations, and policies to the extent found by the commission to be necessary to provide adequate and reasonable wages, hours, and working conditions appropriate for all employees in the modern society. The commission shall amend, repeal, or otherwise modify its rules, regulations, and policies in such manner as the commission, on the basis of such review, deems necessary to comply with the objectives of this chapter. The commission shall conduct such a full review at least once every two calendar years, or at such more frequent times as the commission, based upon then current conditions, deems appropriate.

"Before adopting any new rules, regulations, or policies, the commission shall consult with the Industrial Safety Board to determine those areas and subject matters where the respective jurisdiction of the commission and the Industrial Safety Board overlap. In the case of such overlapping jurisdiction, the Industrial Safety Board shall have exclusive jurisdiction, and rules, regulations, or policies of the commission on the same subject have no force or effect."

months of the year.[13] However, in 1974 the Legislature found that the commission was "having extreme difficulty in complying with the current three-month time limit."[14] The Legislature therefore passed an urgency statute[15] eliminating the three-month requirement.[16]

In summary, the Legislature extended the authority of the commission to determine the wages, hours, and working conditions of all employees, men as well as women and minors, except outside salesmen. But before the commission could update, extend, change, amend, repeal, or otherwise modify its previous orders, rules, regulations, or policies, which covered only women and minors, to exercise its extended authority, the Legislature required the commission to undertake a full review of such orders, rules, regulations, or policies. The Legislature perceived an urgent need for the commission to do so "forthwith." These three legislative pronouncements together relieved the commission, in the present instance, of meeting any separate requirement under section 1178 that the commission "investigate and find" that wages, hours, or working conditions were inadequate or prejudicial. Order 5-76 is the product of the 1973-1974 mandate in section 1173.[17] The commission did not promulgate the order in violation of section 1178.[18]

### The Statement of Basis Issue
*(Labor Code Section 1177)*

The association challenges the validity of Order 5-76 on the ground that the order does not include an adequate statement of basis.

Section 1177 provides in relevant part: "Each order of the commission shall include a statement as to the basis upon which the order is predicated and shall be concurred in by a majority of the commissioners." The commission contends that the "To Whom It May Concern"

---

[13]See Statutes 1973, chapter 1007, section 3, page 2003.

[14]Statutes 1974, chapter 872, section 2, page 1862.

[15]See California Constitution, article IV, section 8, subdivision (d).

[16]Statutes 1974, chapter 872, section 1, page 1861, amending section 1182.

[17]An earlier Order 5-74 issued in March of 1974 was invalidated by a superior court. (See *Henning* v. *Industrial Welfare Commission* (1975) 76 Lab. Cas. (CCH) 71, 159, [¶] 53, p. 639; 22 Wage & Hour Cases 225 (S.F.Super. Ct., No. 674671).)

[18]See also *California Grape etc. League* v. *Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 695-703 [74 Cal.Rptr. 313]; *United Airlines, Inc.* v. *Industrial Welfare Com.* (1963) 211 Cal.App.2d 729, 751-758 [28 Cal.Rptr. 238].

provision of Order 5-76[19] satisfies this statement of basis requirement. We now discuss the purposes behind the statement of basis requirement, set out a standard to test a statement of basis, and apply the standard to the documents in this case.[20]

■ An effective statement of basis fulfills several functions. First, the statement satisfies the legislative mandate of section 1177.[21] Second, the statement facilitates meaningful judicial review of agency action.[22] We

[19]The provision states: "TO WHOM IT MAY CONCERN: TAKE NOTICE: That pursuant to the Legislature's 1973 mandate to the Industrial Welfare Commission to review, update and promulgate regulations necessary to provide adequate and reasonable wages, hours, and working conditions appropriate for all employees, and by virtue of authority vested in the Commission by section 1171 through 1204 of the Labor Code of the State of California, and after investigation and findings pursuant to section 1178 and after receiving recommendations from duly appointed wage boards, and after consideration of all written material and information submitted, and after public hearings duly held, notice of said hearings having been duly given in the manner provided by law, the Industrial Welfare Commission, upon its own motion has found and concluded that its Public Housekeeping Industry Order, Number 5-68, enacted on September 26, 1967 and its Minimum Wage Order 1-74 enacted on January 1, 1974, should be altered and amended.

"NOW, THEREFORE, the Industrial Welfare Commission of the State of California does hereby alter and amend said Public Housekeeping Industry Order, Number 5-68, and its Minimum Wage Order 1-74."

[20]Section 4(c) of the Federal Administrative Procedure Act (A.P.A.), 5 United States Code section 553(c) (1970), contains a statement of basis requirement similar to that of section 1177: "After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." Federal authorities interpreting this provision of section 553(c) may be persuasive, but are not controlling, in interpreting section 1177. See also Executive Order No. 12044, 43 Federal Register 12661 (Mar. 23, 1978), reprinted at 5 United States Code Annotated section 553 (1979 Supp.) ("Improving Government Regulations").

[21]The interim report on the resolution that eventually became current section 1177 states: "The committee believes that the public has a right to know the reasons for the laws which govern them. In addition, the committee believes that the ultimate necessity of publicly justifying their actions will have a salutary effect on the commission's entire process. Consequently, the committee recommends that the commission be required to accompany any new or revised order with written findings concurred in by a majority of the commissioners." (The final enactment refers to a "statement as to the basis upon which the order is predicated" rather than to "written findings.") (Assem. Com. on Industrial Relations, Interim Rep. on H.R. No. 515 (1967 Reg. Sess.) p. 3, reprinted in the clerk's transcript.) See also the edited transcript of the public hearings of the Assembly Interim Committee on Industrial Relations held October 16-17, 1967.

[22]The courts and the administrative agencies "together constitute a 'partnership' in furtherance of the public interest, and are 'collaborative instrumentalities of justice.'" (*Greater Boston Television Corp.* v. *Federal Communications Comm.* (D.C.Cir. 1970) 444 F.2d 841, 851-852, quoting *Niagara Mohawk Power Corp.* v. *F.P.C.* (D.C.Cir. 1967) 379 F.2d 153, 160, fn. 24, and *United States* v. *Morgan* (1941) 313 U.S. 409, 422 [85 L.Ed. 1429, 1435-1436, 61 S.Ct. 999], respectively. See also § 1190. See generally Jaffee, Judicial Control of Administrative Action (1965) *passim.* See also Davis, Administrative Law of the

shall develop this point more fully below. Third, the exposition require-ment subjects the agency, its decision-making processes, and its decisions to more informed scrutiny by the Legislature, the regulated public, lobbying and public interest groups, the media, and the citizenry at large. Fourth, requiring an administrative agency to articulate publicly its reasons for adopting a particular order, rule, regulation, or policy induces agency action that is reasonable, rather than arbitrary, capricious, or lacking in evidentiary support. Fifth, by publicizing the policies, consid-erations and facts that the agency finds significant, the agency introduces an element of predictability into the administrative process. This enables the regulated public to anticipate agency action and to shape its conduct accordingly. Sixth, requiring an agency to publicly justify its orders, rules, regulations, and policies stimulates public confidence in agency action by promoting both the reality and the appearance of rational decisionmak-ing in government.[23]

A central function of a statement of basis is to facilitate judicial review of agency action. It is therefore necessary to determine the standard of judicial review that applies to a commission order fixing the hours, wages, and conditions of employment, before defining a standard to test a statement of basis.

The Legislature authorized the commission to adopt orders, rules, regulations, and policies to fix the wages, hours, and working conditions of employees in accordance with the objectives of sections 1171-1204.[24]. The commission thus exercised a legislative function in promulgating Order 5-76.[25] ■ The courts exercise limited review of legislative acts

Seventies (1976) ch. 16, pp. 377-398; (1978 Supp.) pp. 118-129; Hamilton, *Procedures for the Adoption of Rules of General Applicability: The Need for Procedural Innovation in Administrative Rulemaking* (1972) 60 Cal.L.Rev. 1276; Wright, *The Courts and the Rulemaking Process: The Limits of Judicial Review* (1974) 59 Cornell L.Rev. 375.)

[23]See generally Brest, Processes of Constitutional Decisionmaking (1975) pages 1087-1091, 1143-1146 and authorities cited (discussing the practice of justifying judicial decisions). See also 2 Davis, Administrative Law Treatise (1st ed. 1958) section 16.05, pages 444-449.

[24]See sections 1173, 1177, 1182, 1198.

[25]See *Rivera* v. *Division of Industrial Welfare* (1968) 265 Cal.App.2d 576, 586 [71 Cal.Rptr. 739]. On the distinction between legislative and adjudicative functions, see *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, footnote 2 [112 Cal.Rptr. 805, 520 P.2d 29]; Cal. Administrative Mandamus (Cont.Ed.Bar 1966) pages 399-402. On the breakdown of the distinction in the federal system, see *Mobil Oil Corp.* v. *Federal Power Commission* (D.C.Cir. 1973) 483 F.2d 1238. But see 1 Davis, Administrative Law Treatise (2d ed. 1978) sections 6:19, 6:21, pages 537-542, 551-553. See generally Rabin, Perspectives on the Administrative Process (1979) pages 264-302.

by administrative bodies out of deference to the separation of powers between the Legislature and the judiciary, to the legislative delegation of administrative authority to the agency, and to the presumed expertise of the agency within its scope of authority.[26] ■ Although administrative actions enjoy a presumption of regularity,[27] this presumption does not immunize agency action from effective judicial review.[28] ■ A reviewing court will ask three questions: first, did the agency act within the scope of its delegated authority; second, did the agency employ fair procedures; and third, was the agency action reasonable.[29] Under the third inquiry, a reviewing court will not substitute its independent policy judgment for that of the agency on the basis of an independent trial de novo. A court will uphold the agency action unless the action is arbitrary, capricious, or lacking in evidentiary support. ■ A court must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute.[30] ■ An order fixing

[26]See generally Jaffee, Judicial Control of Administrative Action, *supra*, pages 28-33, 320-327, 569-594.

[27]*Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172, 175 [70 Cal.Rptr. 407, 444 P.2d 79]; *California Assn. of Nursing Homes, etc., Inc.* v. *Williams* (1970) 4 Cal.App.3d 800, 810, 812 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735]; Evidence Code section 664. See also section 1200.

[28]See section 1190. See also *Citizens to Preserve Overton Park* v. *Volpe* (1971) 401 U.S. 402, 415 [28 L.Ed.2d 136, 152-153, 91 S.Ct. 814].

[29]*Ralphs Grocery Co.* v. *Reimel, supra,* 69 Cal.2d 172, 174-175, footnote 2; *California Assn. of Nursing Homes, etc., Inc.* v. *Williams, supra,* 4 Cal.App.3d 800, 815; Davis, Administrative Law of the Seventies, *supra*, page 147.

[30]See *Ralphs Grocery Co.* v. *Reimel, supra,* 69 Cal.2d 172, 179-180; *California Assn. of Nursing Homes, etc., Inc.* v. *Williams, supra,* 4 Cal.App.3d 800, 815. The spectrum of judicial review of administrative action ranges from independent judgment on the basis of a trial de novo, to complete nonreviewability. In between these two extremes lies the degree or degrees of judicial review described by, e.g., the clearly erroneous, weight of the evidence, substantial evidence, arbitrary and capricious, and abuse of discretion standards. (See also Code Civ. Proc., § 1094.5; § 1187.) There has been some discussion in the federal courts as to whether these intermediate standards embody practical or merely semantic differences. (See, e.g., *Ethyl Corp.* v. *Environmental Protection Agency* (D.C.Cir. 1976) 541 F.2d 1, 33-37 (en banc); *Industrial Department, AFL-CIO* v. *Hodgson* (D.C.Cir. 1974) 499 F.2d 467, 472-476; *Associated Indus. of N. Y. S., Inc.* v. *United States Dept. of L.* (2d Cir. 1973) 487 F.2d 342, 347-350, 25 A.L.R.Fed. 134; *Greater Boston Television Corp.* v. *F.C.C.* (D.C.Cir. 1970) 444 F.2d 841, 850-853. See generally Davis, Administrative Law of the Seventies, *supra*, pp. 646-668, 677-683, (1978 Supp.) pp. 255-257, 260-268; Jaffee, Judicial Control of Administrative Action, *supra*, pp. 186-192, 594-604, 615-623.) We need not enter that debate here. The precise formulation of the standard may be less important than what courts actually do in exercising deferential but not perfunctory review: "What matters is that . . . judges generally understand that they may not properly substitute their judgment for administrative judgment except on questions of law on which they are the experts, but that something like reasonableness,

the wages, hours, and conditions of employment therefore may not be arbitrary or capricious, the order must include an adequate statement of basis, and the order and statement must be reasonably supported by the evidence. What constitutes appropriate evidentiary support will necessarily vary with the terms of the order and statement.[31]

■ In light of these considerations, we define the standard to evaluate the statement of basis required by section 1177. Before the commission adopts an order fixing the wages, hours, and conditions of employment, the Labor Code generally[32] requires that the commission determine that wages are inadequate or that the hours and working conditions are prejudicial to the health, morals, or welfare of employees; select a wage board to consider such matters in conference; consider the report and recommendations of the wage board; and circulate a proposal, hold public hearings on the proposal, and compile a record of the hearings.[33] A statement of basis will necessarily vary depending on the material supporting an order and the terms of the order. The statement should reflect the factual, legal, and policy foundations for the action taken. The statement of basis must show that the order adopted is reasonably supported by the material gathered by or presented to the commission—through its own investigations, the wage board proceedings, and the public hearings—and is reasonably related to the purposes of the enabling statute.[34] The statement of basis is not the equivalent of the findings of fact that a court may be required to make. A statement of basis is an explanation of how and why the commission did what it did.[35]

rational basis, substantial evidence, or clearly erroneous guides what they do on other questions, and that in most cases other factors have a much stronger influence than the words of the formula that is supposed to apply. Whatever the formulas, good judges customarily tread lightly when they are impressed with the care, conscientiousness, and balance of the administrators, but they penetrate more deeply, sometimes even substituting judgment, when the administrative performance seems to them to have been slovenly." (Davis, Administrative Law of the Seventies, *supra*, pp. 653-654. See also Jaffee, Judicial Control of Administrative Action, *supra*, pp. 569-594.)

[31]See *California Assn. of Nursing Homes, etc., Inc.* v. *Williams, supra,* 4 Cal.App.3d 800, 810-816; *Rivera* v. *Division of Industrial Welfare, supra,* 265 Cal.App.2d 576, 584-594. See generally 1 Davis, Administrative Law Treatise, *supra,* pages 506-519; Davis, Administrative Law of the Seventies, *supra* (1978 supp.), pages 103-107.

[32]See the discussion at pages 206 through 209, *ante.* See also section 1182, subdivision (a).

[33]See sections 1173, 1178, 1180, 1182.

[34]See sections 1173, 1177, 1182, 1198. See also Government Code section 11374; Statutes 1973, chapter 1007, section 11, page 2005.

[35]Section 1187, which states that the "findings of fact made by the commission are, in the absence of fraud, conclusive," therefore does not apply to a statement of basis. On the distinction between findings of fact and statements of basis, see *Amoco Oil Co.* v.

If terms of the order turn on factual issues, the statement must demonstrate reasonable support in the administrative record for the factual determinations. If, on the other hand, the terms of the order turn on policy choices, an assessment of risks or alternatives, or predictions of economic or social consequences, the statement of basis must show how the commission resolved conflicting interests and how that resolution led to the order chosen. If an order differentiates among classes of industries, employers, or employees, the statement of basis must show that the distinctions drawn are reasonably supported by the administrative record and are reasonably related to the purposes of the enabling statute. A statement meeting these standards will facilitate review by the judiciary, the Legislature, and the regulated public by presenting a reasoned response to or resolution of the salient comments, criticisms, issues, and alternatives developed during the commission's proceedings.[36]

The "To Whom It May Concern" provision of Order 5-76 does not satisfy this standard. The provision is simply a recitation of the commission's authority and of the procedures outlined in sections 1171 through 1204. This purported statement of basis does not fulfill any of the functions of an effective statement outlined above.

The commission argues that even if the "To Whom It May Concern" provision does not satisfy the statement of basis requirement of section 1177, the document entitled "Statement of Findings" included in the administrative record does satisfy section 1177. The commission adopted the Statement of Findings and Order 5-76 at the same meeting.[37] The

*Environmental Protection Agency* (D.C.Cir. 1974) 501 F.2d 722, 734-741.

[36]See generally *Rodway* v. *United States Dept. of Agriculture* (D.C.Cir. 1975) 514 F.2d 809, 816-818; *Amoco Oil Co.* v. *Environmental Protection Agency, supra,* 501 F.2d 722, 734-741; *Kennecott Copper Corp.* v. *E.P.A.* (D.C.Cir. 1972) 462 F.2d 846, 850; *Greater Boston Television Corp.* v. *F.C.C., supra,* 444 F.2d 841, 850-853; *Scenic Hudson Preservation Conf.* v. *Federal Power Com'n.* (2d Cir. 1965) 354 F.2d 608, 612-613; 1 Davis, Administrative Law Treatise, *supra,* pages 496-506. See also *Vermont Yankee Nuclear Power* v. *NRDC* (1978) 435 U.S. 519, 549 [55 L.Ed.2d 460, 482-483, 98 S.Ct. 1197]. But see 1 Davis, Administrative Law Treatise, *supra,* pages 605-634 (scathing criticism of *Vermont Yankee*).

[37]Section 1177 states that a majority of the commission must concur in the statement of basis. The association questions whether a majority of the commission actually concurred in the Statement of Findings. The association points out, for example, that the Statement of Findings states two reasons as to why the commission did not adopt a different minimum wage for tipped as opposed to nontipped employees: First, because the commission believed that section 351 eliminated its authority to credit tips against the minimum wage. Second, because "*some* Commissioners concluded . . . that, if a special rate were allowed, most classifications of restaurant employees would be made vulnerable to such deductions, and those actually receiving tips from customers for personal service

Statement of Findings does not satisfy the statement of basis requirement for several reasons.

First, section 1177 states that each order shall include a statement of basis. Sections 1182 and 1183 require that an order be published and mailed to employers. Order 5-76 does not include or even mention the Statement of Findings, and the statement was not published or mailed to employers. The statement simply remained in the administrative record. The Statement of Findings therefore does not satisfy the requirements of sections 1177, 1182, and 1183.[38]

Second, the Statement of Findings does not address salient comments and alternatives presented during the public hearings on proposed Order 5-76. For example, the commission exempted a number of industries from its regulations covering hours and days of work,[39] because the commission concluded that collective bargaining agreements "adequately" protected employees in those industries.[40] However, the commission did not exempt the public housekeeping industry from coverage, even though the association presented evidence that collective bargaining in the industry was "adequate" rather than "weak." The commission did not explain how it distinguished adequate from inadequate collective bargaining agreements. The commission did not explain why it exempted other industries, but not the public housekeeping industry. Similarly, the commission reduced the workweek in the public housekeeping industry from 48 to 40 hours, without responding to the association's argument that the industry practice of having a longer workweek benefitted both employers and employees because of the peak-load demand for employment peculiar to the industry. The Statement of Findings thus does not satisfy the standard of an adequate statement of basis under section 1177 outlined above.

---

would be subsidizing wages of other employees even more than at present." (Statement of Findings, at p. 11. Italics added.) The association argues that the Statement of Findings is ambiguous as to whether a majority of the commission concurred in either or both of these reasons. However, the commission action enjoys a presumption of regularity. (See fn. 27, *ante,* and accompanying text.) We therefore conclude that a majority of the commission concurred in both of these reasons and in the Statement of. Findings as a whole, in the absence of proof otherwise.

[38]See *Tabor* v. *Joint Bd. for Enrollment of Actuaries* (D.C.Cir. 1977) 566 F.2d 705, 710-712; *National Nutritional Foods Assn.* v. *Weinberger* (2d Cir. 1975) 512 F.2d 688, 701; 1 Davis, Administrative Law Treatise, *supra,* page 505.

[39]The commission exempted the following industries: manufacturing; professional, technical, clerical, mechanical and similar occupations; laundry, linen supply and dry cleaning; mercantile; transportation; broadcasting; and motion picture.

[40]Statement of Findings at page 8.

In conclusion, the commission failed to include an adequate statement of basis in Order 5-76 as required by sections 1177, 1182, and 1184. Order 5-76 is therefore invalid as promulgated.[41] However, the order has been in effect since 1976. The minimum wage order is of critical importance to significant numbers of employees. Those employees bear no responsibility for the deficiencies of Order 5-76. This court has inherent power to make an order appropriate to preserve the status quo pending correction of deficiencies.[42] Order 5-76 is to remain operative[43] pending further proceedings to be taken promptly by the commission.

The judgment is reversed with directions to issue a writ of mandate to compel the commission to take further action in a manner consistent with this opinion within 120 days of the finality of the opinion.

**NEWMAN, J.**—I dissent. I believe that experienced observers of how government agencies work will be astonished to learn that, when a statute requires a statement "as to the basis" on which rules are predicated, administrative rulemaking in California is now to be encumbered as follows: "The statement should reflect the factual, legal, and policy foundations for the action taken. The statement of basis must show that the order adopted is reasonably supported by the material gathered by or presented to the commission—through its own investigations, the wage board proceedings, and the public hearings—and is reasonably related to the purposes of the enabling statute. The statement of basis is not the equivalent of the findings of fact that a court may be required to make. A statement of basis is an explanation of how and why the commission did what it did. If terms of the order turn on factual issues, the statement must demonstrate reasonable support in the administrative record for the factual determinations. If, on the other hand, terms of the order turn on policy choices, an assessment of risks or alternatives, or predictions of economic or social consequences, the statement of basis must show how the commission resolved conflicting interests and how that resolution led to the order chosen. If an order differentiates among classes of industries,

---

[41] See section 1185.

[42] On the inherent power of the court to make an order to preserve the status quo, see, e.g., *People* ex rel. *S. F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 536-539 [72 Cal.Rptr. 790, 446 P.2d 790]; Code of Civil Procedure section 923. See also *Rodway* v. *United States Dept. of Agriculture, supra,* 514 F.2d 809, 817-818 (federal food stamp regulations, held invalid as promulgated, remained operative pending remand for further rulemaking proceedings). See generally Jaffee, Judicial Control of Administrative Action, *supra,* pages 654-720. See also 1 Davis, Administrative Law Treatise, *supra,* page 505.

[43] See section 1185. Compare section 1185 with section 1204. See also section 1182, subdivision (a).

employers, or employees, the statement of basis must show that the distinctions drawn are reasonably supported by the administrative record and are reasonably related to the purposes of the enabling statute." (Maj. opn., *ante,* p. 213, fns. omitted.)

That much-too-detailed set of instructions to agency rulemakers should be contrasted with this introductory paragraph in § 6.01-2 of Davis, Administrative Law of the Seventies (1976): "The [Federal] Administrative Procedure Act provides in § 553 that the agency, after receiving written comments, 'shall incorporate in the rules adopted a concise general statement of their basis and purposes.' The APA does not require a statement of findings of fact. See Att'y Gen. Manual on the APA 32 (1947): 'Except as required by statutes providing for "formal" rule making procedure, findings of fact and conclusions of law are not necessary. Nor is there required an elaborate analysis of the rules or of the considerations upon which the rules were issued. Rather, the statement is intended to advise the public of the general basis and purpose of the rules.' "[1]

Unlike the federal APA, the California statute that governs here does not require a "statement of . . . basis and purpose." It does not even require a "statement of basis" (though that phrase appears more than 25 times in the majority opinion here). Our Legislature's sole command is that there be a "statement *as to* the basis" (italics added).

By no means is the To-Whom-It-May-Concern provision of Order 5-76 (maj. opn., *ante,* p. 210, fn. 19) a model or prototype statement. It hardly merits inclusion in any formbook. In my view, though, its arguable defects have not caused prejudicial error. (Cf. Gov. Code, § 11440 ("any regulation . . . *may* be declared to be invalid for a *substantial* failure to comply"). (Italics added.) The following observations by Kenneth Culp Davis seem to me to evidence more insight as to overall fairness in governing than does the majority ("By the Court") opinion here: "[A] statement that 'findings' and 'reasons' are required for informal rulemaking would be inaccurate, for such a statement would be an oversimplification. The focus of discerning judges is not on such words as 'findings' and 'reasons' but is on the total picture in each case of the reasonableness of the support for the rules in the rulemaking record and the adequacy of

[1] Professor Davis' comment on the omission of the requirement of "a statement of findings" pertains to footnote 21 on page 210 and footnote 35 on page 213 of the majority opinion, *ante.* What happened in Sacramento, I suggest, is that an initial call for "written findings" soon gave way to approval of words ("statement as to the basis") for which legislative analogies are easily found in the preambular paragraphs that often introduce statutes.

the agency's explanation for its determination. In most cases in which the question has been important, the adequacy of the explanation is mixed in with other facets of the challenge of the rules, so that *a focus on the explanation, without taking into account the interrelated complexities, is somewhat artificial.*" (1 Davis, Administrative Law Treatise (2d ed. 1978) p. 499; italics added.)

**CHRISTIAN, J.,**\* Concurring.†—I have joined in the majority opinion. That opinion stands on its own reasoning as a disposition of the cause but a separate response to the dissent is appropriate to underscore the soundness of the majority opinion.

The dissent maintains that "experienced observers of how government agencies work will be astonished to learn" that the California Supreme Court has adopted the following standard to test a statement of basis: " 'A statement of basis will necessarily vary depending on the material supporting an order and the terms of the order. The statement should reflect the factual, legal, and policy foundations for the action taken. The statement of basis must show that the order adopted is reasonably supported by the material gathered by or presented to the commission—through its own investigations, the wage board proceedings, and the public hearings—and is reasonably related to the purposes of the enabling statute. The statement of basis is not the equivalent of the findings of fact that a court may be required to make. A statement of basis is an explanation of how and why the commission did what it did. If terms of the order turn on factual issues, the statement must demonstrate reasonable support in the administrative record for the factual determinations. If, on the other hand, terms of the order turn on policy choices, an assessment of risks or alternatives, or predictions of economic or social consequences, the statement of basis must show how the commission resolved conflicting interests and how that resolution led to the order chosen. If an order differentiates among classes of industries, employers, or employees, the statement of basis must show that the distinction drawn is reasonably supported by the administrative record and are reasonably related to the purposes of the enabling statute.' " (Dis. opn., *ante,* at pp. 216-217, fns. omitted.)

It is not clear what the dissent means when it asserts that "experienced observers of how government agencies work will be astonished to learn" that this court has adopted this standard. Presumably, experienced observers of how agencies work will be familiar with developments in

*Assigned by the Acting Chairperson of the Judicial Council.
†Reporter's Note: Concurring opinion filed September 7, 1979.

administrative law over the last decade. For example, students of administrative law will be familiar with the long line of cases from the federal appellate courts interpreting section 4(c) of the Administrative Procedure Act (APA), 5 United States Code section 553(c) (1970), which contains a statement of basis requirement similar to the requirement of Labor Code section 1177.[1] Leading cases interpreting the federal statement of basis requirement, cited in the majority opinion, include *Rodway* v. *United States Dept. of Agriculture* (D.C.Cir. 1975) 514 F.2d 809, 816-818; *Amoco Oil Co.* v. *Environmental Protection Agency* (D.C. Cir. 1974) 501 F.2d 722, 734-741; *Kennecott Copper Corp.* v. *Environmental Protection Agcy.* (D.C.Cir. 1972) 462 F.2d 846, 850; *Greater Boston Television Corporation* v. *F.C.C.* (D.C.Cir. 1970) 444 F.2d 841, 850-853 and *Scenic Hudson Preservation Conf.* v. *Federal Power Com'n.* (2d Cir. 1965) 354 F.2d 608, 612-613; see also *Citizens to Preserve Overton Park* v. *Volpe* (1971) 401 U.S. 402 [28 L.Ed.2d 136, 91 S.Ct. 814]. Students of administrative law will also be familiar with academic writings on the federal statement of basis requirement, e.g., 1 Davis, Administrative Law Treatise (2d ed. 1978) pages 496-506. (See also, Davis, Administrative Law of the Seventies (1976) pp. 172-176, 393-398 (1978 supp.) pp. 124-129; Jaffee, Judicial Control of Administrative Action (1965) *passim;* Wright, *The Courts and the Rulemaking Process: The Limits of Judicial Review* (1974) 59 Cornell L.Rev. 375.) The standard adopted in the majority opinion represents a distillation of the standards articulated in these cases and commentaries. Students of administrative law familiar with these materials will not be astonished to learn that the California Supreme Court has adopted a position in line with the contemporary trend of authority.

The dissent seems to contend that California Labor Code section 1177 is not analogous to section 4(c) of the federal APA, and that authorities interpreting section 4(c) are therefore not helpful to interpretation of section 1177. The dissent stresses that section 1177 requires a "statement *as to* the basis" upon which an order is predicated. (Dis. opn., *ante,* p. 217; italics added.) According to the dissent, section 1177 (unlike § 4(cc)) does not require " 'a statement of . . . basis and purposes.' " Neither, the dissent says, does section 1177 require a " 'statement of basis.' " The dissent's analysis through italics is not enlightening. There is no significant distinction between the phrases "statement as to the basis upon

---

[1]Section 1177 states: "Each order of the commission shall include a statement as to the basis upon which the order is predicated . . . ." Section 4(c) of the APA states: "After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." (See also Executive Order No. 12044, 43 Fed. Reg. 12661 (Mar. 23, 1978), reprinted at 5 U.S.C.A. § 553 (1979 supp.) ("Improving Government Regulations"); see *ante,* p. 210, fn. 20.)

which the order is predicated" (Lab. Code, § 1177), "statement of their basis and purpose" of a rule (APA § 4(c)), and "statement of basis" (maj. opn.). The legislative histories behind Labor Code section 1177 and federal APA section 4(c) indicate that the state and federal Legislatures had similar intentions in requiring agencies to adopt statements as to basis or statements of basis and purpose. (Compare the iterim rep. on the resolution that led to enactment of current § 1177, quoted in the majority opn., *ante,* p. 210, fn. 21, with the U.S.Sen. documents quoted in 1 Davis, Administrative Law Treatise, *supra,* p. 497.) Section 1177 and section 4(c) are analogous, and authorities interpreting the federal statute, although not controlling, are persuasive in interpreting section 1177.

In connection with the discussion of the asserted distinctions between section 1177 and section 4(c), the dissent states: "What happened in Sacramento, I suggest, is that an initial call for 'written findings' soon gave way to approval of words ('statement as to the basis') for which legislative analogies are easily found in the preambular paragraphs that often introduce statements." (Dis. opn., *ante,* p. 217, fn. 1.) The dissent offers no evidence to support this speculation regarding legislative intent, and disregards the legislative histories cited *supra.* It quotes the following paragraph: "The Administrative Procedure Act provides in §553 that the agency, after receiving written comments, 'shall incorporate in the rules adopted a concise general statement of their basis and purpose.' The APA does not require a statement of findings of fact. See Att'y Gen. Manual on the APA 32 (1947): 'Except as required by statutes providing for "formal" rule making procedure, findings of fact and conclusions of law are not necessary. Nor is there required an elaborate analysis of the rules or of the considerations upon which the rules were issued. Rather, the statement is intended to advise the public of the general basis and purpose of the rules.'" (Davis, Administrative Law of the Seventies, *supra,* p. 172, quoted in the dissent, *ante,* p. 217.) The dissent apparently is under the impression that the quoted paragraph reflects Professor Davis' views on the current law pertaining to statement of basis under the federal APA. This impression is incorrect. Professor Davis quoted the Attorney General's manual merely to indicate the state of the law *in 1947.* Professor Davis then goes on to demonstrate how much the law regarding findings, reasons, statements of basis and purpose, and an agency's response to comments has evolved since then, particularly over the last 10 years. (See Davis, Administrative Law of the Seventies, *supra,* pp. 172-176, 393-398 (supp. 1978) pp. 124-129; see also 1 Davis, Administrative Law Treatise, *supra,* pp. 496-506.) Perhaps the dissent is

advocating that this court revert to administrative law of the 1940s. This may astonish experienced observers of how government agencies and courts work.

The dissent concludes that the "To Whom It May Concern" paragraph of Order 5-76 (quoted in the maj. opn., *ante,* p. 210, fn. 19) is not "a model or prototype statement," that the paragraph "hardly merits inclusion in any formbook," and that its "arguable defects" have not caused any "prejudicial error." These *ipse dixit* assertions do not provide any guidance as to how the cited paragraph was adequate or inadequate as a statement of basis. For example, the dissent does not address the conclusions reached by the majority: (1) The "To Whom It May Concern" provision is simply a recitation of the commission's authority and of the procedures outlined in Labor Code sections 1171 through 1204, and therefore does not fulfill the purposes of an adequate statement of basis. (2) The commission exempted a number of industries from its regulations covering hours and days of work, because the commission concluded that collective bargaining agreements "adequately" protected employees in those industries. The commission did not exempt the public housekeeping industry from coverage, even though the association presented evidence that collective bargaining in the industry was "adequate" rather than "weak." The commission did not explain how it distinguished adequate from inadequate collective bargaining agreements. The commission did not explain why it exempted other industries, but not the public housekeeping industry. (3) The commission reduced the workweek in the public housekeeping industry from 48 to 40 hours, without responding to the appellant's argument that the practice of having a longer workweek benefited both employers and employees because of the peakload demand for employment peculiar to the industry.

The dissent closes with the following quotation: "[A] statement that 'findings' and 'reasons' are required for informal rulemaking would be inaccurate, for such a statement would be an oversimplification. The focus of discerning judges is not on such words as 'findings' and 'reasons' but is on the total picture in each case of the reasonableness of the support for the rules in the rulemaking record and the adequacy of the agency's explanation for its determination. In most cases in which the question has been important, the adequacy of the explanation is mixed in with other facets of the challenge of the rules, so that a focus on the explanation, without taking into account the interrelated complexities, is somewhat artificial." (1 Davis, Administrative Law Treatise, *supra,* p. 499,

quoted in the dissent, *ante,* p. 217.) The dissent claims that these observations by Professor Davis "evidence more insight as to over-all fairness in governing than does the majority ('By the Court') opinion . . . ." (*Id.,* at p. 217.) The dissent quotes Professor Davis out of context. If the quoted paragraph is read in the context of the entire section covering findings, reasons, statement of basis and purpose, and an agency's response to comments (see 1 Davis, Administrative Law Treatise, *supra,* pp. 496-506), it is easy to see that the text fully supports the position adopted by the majority. Professor Davis writes that the courts "have been at their creative best" in helping to shape what is "unquestionably one of the greatest inventions of modern government" by fashioning statutory and common law rules that enable a court to set aside orders and regulations if "(1) facts in the rulemaking record are inadequate in critical degree, (2) the agency has failed to respond to comments that are deemed vital, (3) the agency has failed to sustain the burden of proof with respect to facts the reviewing court finds essential, (4) affected persons have had insufficient opportunity to know and to meet important facts the agency has considered, or (5) the agency's statement of basis and purpose of the rules is unduly vague or is not firmly supported by facts in the rulemaking record." (*Id.,* at p. xiii.) In the instant case, the commission failed to respond to appellant's comments that the public housekeeping industry was entitled to be exempted from regulations covering hours and days of work, because collective bargaining agreements in the industry adequately dealt with these issues. The commission failed to respond to appellant's comments that the industry should be allowed to retain a 48- rather than a 40-hour week because of peak-load employment demands peculiar to the industry. Appellant had an insufficient opportunity to know what facts the commission considered important in determining whether collective bargaining in an industry was adequate or weak. The "To Whom It May Concern" provision of Order 5-76 was unduly vague as a statement of basis in these respects. Because the commission did not state the reasons why it ruled as it did, it is impossible for a court to determine whether the order and reasons are adequately supported by facts in the administrative record. Thus, the commission failed to satisfy four out of Professor Davis' five standards. The charge that the majority opinion shows a lack of "insight as to over-all fairness in governing" is unmerited.