Filed 8/12/22; Certified for Publication 8/15/22 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CV AMALGAMATED LLC, | D078720 & D079322 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2020-00033446-CU-MC-CTL) |
| CITY OF CHULA VISTA, | |
| Defendant and Respondent. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on July 19, 2022, be modified as follows:

1.     On page 11, delete the first two sentences of the first paragraph (starting with "Counsel for the City" and ending with "or were disqualified"), replace with the following two sentences, and add new footnote 11 as indicated, which will require the renumbering of all subsequent footnotes:

The appellate record does not contain evidence about the current status of the City's licensing of storefront cannabis businesses.[11] However, documents in the appellate record show that subsequent to the City's denial of CVA's applications, all of the applicants for storefront retail licenses in Council District One that had been selected to participate in Phase Two either dropped out or were disqualified.

[11] After we originally issued our opinion in this matter, in a belated attempt to present evidence showing the current status of its licensing efforts for storefront cannabis businesses, the City filed a request for judicial notice and a motion to take new evidence on appeal, along with a petition for rehearing. Although it made no attempt to present new evidence during the course of this appeal, the City now asks that we grant rehearing to consider evidence showing that the City has already issued storefront licenses to several cannabis retailers in several Council Districts. The City contends that the new evidence would support its argument that indispensable parties have not been joined in this action and would show that some of the relief sought by CVA will be ineffectual. The City cites Code of Civil Procedure section 909 and California Rule of Court, rule 8.252(b) and (c), which permit a litigant to bring a motion requesting that a reviewing court take new evidence in a non-jury case. As the City acknowledges, such a request will be granted, in the discretion of the reviewing court, only in exceptional circumstances. (*Diaz v. Prof. Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1213.)

Whether or not the City's request that we consider such evidence might have been meritorious if it was made during the briefing and argument of this appeal (an issue we do not reach), the request is inappropriate at this stage of the proceedings after we already issued our opinion. (*Gentis v. Safeguard Business Systems, Inc.* (1998) 60 Cal.App.4th 1294, 1308 ["It is well settled that arguments . . . cannot be raised for the first time in a petition for rehearing"]; *Smith v. Crocker First Nat. Bank of San Francisco* (1957) 152 Cal.App.2d 832, 837 ["Counsel are not permitted to argue their cases in a piecemeal fashion and points not previously argued will not be considered where raised for the first time on petition for rehearing."].) Based on the City's description of the relevant timeline, during the briefing and argument of this appeal there was ample time for the City to attempt to submit new evidence, for CVA to present any countervailing evidence, and for the parties to discuss the legal significance of that evidence. According to the City, the first license was issued more than a month before

2

CVA's November 1, 2021 opening appellate brief was filed; another license was issued before the City filed its respondent's brief; and the remaining licenses were issued before oral argument. The City's failure to identify the new evidence during the briefing and argument of this appeal is unexplained and inexcusable. It is also an abuse of the resources of this court for the City to ask us to reexamine this appeal and to consider additional legal issues based on newly submitted evidence that the City could have identified at an earlier stage. We accordingly deny the petition for rehearing, along with the City's motion to take new evidence and the request for judicial notice.

In light of the City's representation that other storefront cannabis licenses have issued, we emphasize that the scope of relief sought by CVA in this appeal does not include a request for an order invalidating any storefront cannabis licenses that the City may have already issued to other parties. Our decision in favor of CVA in this appeal, accordingly, should not be construed as directing that the trial court must issue a writ invalidating any licenses issued to other parties.

2. On page 28, delete the last two sentences of the second paragraph (starting with "Those actions" and ending with "relief it seeks") including deleting former footnote 15, and replace with the following language and newly numbered footnote 16:

As the relief that CVA seeks in this appeal does not include an order invalidating any licenses that the City may have issued to other parties, other parties will not be prejudiced by any writ that we direct the trial court to issue.[16] We therefore conclude that no parties need be joined in this action prior to granting CVA the relief it seeks on appeal.

[16] Because CVA does not seek an order invalidating any license issued to another party, this case is not like the opinion cited by the City to support its argument, in which a party who was already issued valid permits was determined to be an indispensable party in an action seeking to cancel those permits. (*Greif v. Dullea* (1944) 66 Cal.App.2d 986, 993-994 [taxi operator was an indispensable party because the relief sought would result in cancelling permits to operate its taxis].)

3

3.	On page 29, before the last sentence of the "Disposition" section (beginning with "CVA shall recover"), insert the following sentence:

> The scope of relief sought by CVA in this appeal did not include an order invalidating any storefront cannabis licenses that may have already been issued by the City to other parties, and this opinion should not be construed as directing that the trial court must issue a writ affording any such relief.

> There is no change in the judgment.

> Respondent's petition for rehearing is denied.


O'ROURKE, Acting P. J.

Copies to:  All parties

4

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CV AMALGAMATED LLC, | D078720 & D079322 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2020-00033446-CU-MC-CTL) |
| CITY OF CHULA VISTA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. L. Strauss, Judge.  Reversed.

Finch, Thornton & Baird, David S. Demian and Mariah K. Emmons, for Plaintiff and Appellant.

Musick, Peeler & Garrett, Cheryl A. Orr, William A. Bossen and Daniel J. Taylor, for Defendant and Respondent.


This litigation arises from a decision by the City of Chula Vista (the City) to reject applications by CV Amalgamated LLC, dba Caligrown (CVA) for licenses to operate retail cannabis stores in the City.  Specifically, CVA challenges the trial court's denial of its petition for a writ of mandate (Code Civ. Proc., § 1085) in which it sought an order requiring the City to:

(1) rescind its rejection of CVA's applications; (2) fully rescore CVA's applications as directed by the City Manager; and (3) follow the requirements set forth in the City's laws and regulations for awarding licenses to operate storefront retail cannabis businesses.

We conclude that CVA's appeal has merit, and we therefore reverse the judgment and order the trial court to issue a writ of mandate requiring the City to take the actions prayed for by CVA.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The City's Cannabis Ordinance and Cannabis Regulations Governing the Issuance of Licenses to Operate a Retail Cannabis Business in the City*

In 2018, the City enacted an ordinance regulating commercial cannabis businesses (the Cannabis Ordinance).  (Mun. Code, §§ 5.19.010-5.19.290.)[1] Among other things, the Cannabis Ordinance allows for a maximum of eight storefront retail cannabis business licenses, with up to two licenses in each of the City's four council districts (the Council Districts).  (*Id.*, § 5.19.040, subd. (A).)[2]  The procedure to apply for a license is set forth in the Cannabis Ordinance (*id.*, § 5.19.050), as supplemented by the regulations that the City issued to clarify and facilitate the implementation of the Cannabis Ordinance (the Cannabis Regulations)[3] (Regs., §§ 0501, 0502).

---

[1]    All references to "Mun. Code" are to the Chula Vista Municipal Code.

[2]    Specifically, the Cannabis Ordinance provides for both "Storefront" retail licenses and "Non-Storefront" (i.e., delivery) retail licenses.  No more than three retail licenses are available in each council district, but no more than two in each district may be Storefront licenses.  (Mun. Code, § 5.19.040, subd. (A).)

[3]    All further references to "Regs." are to the Cannabis Regulations.

2

The application procedure is broken into two phases. In Phase One, an applicant submits an application with required information. (Mun. Code, § 5.19.050, subd. (A).) The required information includes: (1) a description of the applicant's experience; (2) documentation demonstrating a minimum of $250,000 in liquid assets; (3) a business plan; and (4) an operating plan. (*Id.*, § 5.19.050, subd. (A)(1).) The Phase One application is reviewed by the City's Finance Director and Police Chief to determine whether it meets the minimum qualifications set forth in the Cannabis Ordinance and whether the applicant has passed the required background checks. (*Id.*, § 5.19.050, subds. (A)(4), (A)(5).) The Finance Director and Police Chief have discretion to reject an application only for the specific reasons set forth in the Cannabis Ordinance.[4] After the Phase One review is complete, the applicant receives written notice of approval or rejection. (*Id.*, § 5.19.050, subd. (A)(6).)[5] An

---

[4] The grounds upon which the Finance Director may reject an application focus on the timeliness and completeness of the application and whether the applicant meets the minimum specified requirements. (Mun. Code, § 5.19.050, subd. (A)(4).) The grounds upon which the Police Chief may reject an application center on criminal activity or misconduct in the operation of a cannabis, alcohol or pharmaceutical business by the applicant or any of its owners, officers, or managers, or the failure of any of those individuals to submit to a background check, including fingerprinting. (*Id.*, § 5.19.050, subd. (A)(5).) The Cannabis Ordinance does not provide the Finance Director or the Police Chief with the discretion to reject the application for any reason beyond those listed. (*Id.*, § 5.19.050, subds. (A)(4), (A)(5).)

[5] The Cannabis Ordinance states, "The Finance Director or Police Chief shall serve the Applicant, either [p]ersonally or by first class mail addressed to the address listed on the application, with dated written notice of the decision to approve or reject the Phase One Application." (Mun. Code, § 5.19.050, subd. (A)(6).) The Cannabis Regulations state, "If an applicant's Phase One application has been approved by the Finance Director and Police

3

applicant may appeal a rejection to the City Manager. (*Id.*, § 5.19.050, subd. (A)(6).)

An applicant who is approved in Phase One is qualified to participate in Phase Two, but depending on the number of qualified candidates, that applicant may not end up being offered a Phase Two application slot. The Cannabis Ordinance provides, "Applicants who are approved by the Finance Director and Police Chief under the Phase One Application process, or by the City Manager upon appeal, shall be deemed qualified to submit a Phase Two Application. If the number of deemed 'qualified' Phase One Applicants . . . exceeds the number of available City Licenses . . . , a merit-based system established by the City shall be used to determine which of the qualified Applicants is invited to submit a Phase Two Application." (Mun. Code, § 5.19.050, subd. (A)(7).)

The merit-based system for determining which applicants are given an application slot in Phase Two is described in the Cannabis Regulations. (Regs., § 0501, subd. (N).) "All qualified retailer applications will be scored in the following four categories with the maximum points possible in each category as follows: [¶] *a.* Experience/Qualifications of the business owner/team (150 points) [¶] *b.* Liquid Assets (50 points) [¶] *c.* Business Plan (150 points) [¶] *d.* Operating Plan (150 points) [¶] The highest initially scored applications will undergo an additional interview process to further assess each scored category. The maximum aggregate score shall be 500 points." (*Id.*, § 0501, subd. (N)(1).) The Cannabis Regulations set forth a detailed description of how the merit-based scoring system will be used to

Chief, the Finance Director will provide the applicant with dated, written notice that the Phase One Application has been deemed qualified." (Regs., § 0501, subd. (L).)

4

decide which applicants obtain the available licenses.  Because the detail of that process is important to this appeal, we set forth the relevant provisions at length:

> "2. <u>Selection Process</u>.  All qualified applications will be ranked from highest to lowest in aggregate score and placed on a list in that order.  Selection of applications to proceed to the Phase Two Application Process will be made from this list according to the following process:

>> "*a.*    The highest aggregate scored application will be given a Phase Two application slot for the Council District and retailer category identified in their application.  Applications that have received a tie aggregate score will be placed in rank order using a random selection process (pick numbers out of a hat, etc.)  Subsequent applications will then be selected in the rank order of their aggregate score and placed into their selected Council District and retailer category.  [¶] . . . [¶]

>> "*b.*    The above process will continue until an application results in a Council District reaching the maximum number of licenses allowed by [Chula Vista Municipal Code] 5.19.  This could be 2 storefront retailers and 1 non-storefront retailer; 1 storefront retailer and 2 non-storefront retailers; or 3 non-storefront retailers.

>> "*c.*    Once a Council District has reached the maximum number of retailer license applications allowed, only the remaining qualified applications for the unfilled Council Districts will be used to select for the remaining licenses in those unfilled Council District[s].

>> "*d.*    This selection process will continue for the remaining unfilled Council Districts following steps a. through c. above until the maximum number of licenses for each Council District have be[en] reached, or until qualified applications for unfilled Council Districts are exhausted.

"*e.* Should qualified applications for unfilled Council Districts be exhausted, any remaining unselected, qualified applications for filled Council Districts will be placed in rank order based on their aggregate score. The highest ranked remaining qualified application for a filled Council District that matches the retailer category in an unfilled Council District and that does not have another retailer license application that was selected in that unfilled Council District will be offered the opportunity to select a site within the unfilled Council District and obtain a signed, notarized statement from the owner(s) of a site located within that Council District per the requirements of the Phase One application process. . . . Should the applicant decline the opportunity or fail to complete site selection and submit the owner notification statement within 30 days, the next ranked remaining qualified application for a filled Council District will be selected and offered the same opportunity. The selection process contained in this subsection will continue for the remaining unfilled Council Districts.

"*f.* If a selected qualified retailer applicant withdraws their application or is unable to complete the Phase Two process, the next ranked remaining unselected qualified application will be offered the same process as step e. This will continue until all Council Districts have reached the maximum number of licenses or until qualified applications are exhausted." (Regs., § 0501, subd. (N)(2).)

Under this selection process, an applicant for a storefront license that is deemed qualified in Phase One remains eligible to possibly obtain an application slot in Phase Two until all of the storefront licenses are issued in each Council District. Whether or not an applicant receives a Phase Two application slot will depend on the applicant's ranking during the merit-based scoring process. Only when all of the applicants for storefront licenses in one Council District are depleted will the City offer a Phase Two application slot to an applicant who applied in a different Council District.

6

An applicant deemed qualified in Phase One is to receive a notice of rejection only after the Phase Two process is completed and all of the licenses are issued. Specifically, the Cannabis Regulations provide that "[o]nce the Phase One selection process for all Council Districts is complete, any remaining unselected qualified applicants will be sent a Notice of Decision." (Regs., § 0501, subd. (N)(3).)

B. *CVA's Applications for a Storefront Retail License*

CVA submitted applications for storefront retail cannabis business licenses in each of the City's four Council Districts.[6] On January 31, 2020, the Chief of Police sent CVA four identical notices rejecting CVA's Phase One applications in each of the four Council Districts. The Chief of Police identified three grounds for the rejections: (1) failure to submit required fingerprints; (2) a conviction of moral turpitude of one of CVA's principals; and (3) the failure of CVA to score high enough in a merit-based evaluation conducted by the City. With respect to the third reason for the rejections, the Chief of Police stated that the "provisional application score of 339 has failed to rank high enough to be given a Phase Two application slot for [the relevant Council District]."[7]

---

[6] CVA's four applications were among the 136 applications for retail cannabis business licenses received by the City, 84 of which were for storefront licenses.

[7] Although the Cannabis Ordinance and Cannabis Regulations state that merit-based scoring is to be conducted only *after* an applicant is deemed qualified in Phase One for the purpose of determining whether to give the applicant an application slot in Phase Two, the Chief of Police cited CVA's merit-based score as one of the bases for rejecting CVA's applications in Phase One.

7

CVA filed an appeal with the City Manager, in which it challenged the City's rejections of its applications for licenses in Council Districts One, Three and Four. With respect to the score it received in the merit-based evaluation, CVA argued, among other things, that the scoring was unfair because it was based on criteria that CVA did not know would be evaluated during Phase One. The City Manager held an administrative hearing on April 30, 2020, during which witness testimony was presented. Among the witnesses was Matthew Eaton, director of operations from the outside firm HdL Companies, which the City retained to evaluate the license applications. Although Eaton did not perform the initial review and scoring of CVA's applications, he testified, based on having "re-reviewed" the applications, about the reasons that CVA received a score of 339. Eaton testified at length that CVA's score was lower than it could have been because CVA did not format its applications in a manner that grouped together in the same section all of the information relevant to each of the four categories on which an applicant was to be scored.[8]

_____

[8]  As we have noted, the Cannabis Regulations state that applicants will be scored based on "*a.* Experience/Qualifications of the business owner/team (150 points) [¶] *b.* Liquid Assets (50 points) [¶] *c.* Business Plan (150 points) [¶] *d.* Operating Plan (150 points)." (Regs., § 0501, subd. (N)(1).) Eaton testified that "applicants who scored outstanding generally . . . presented their application very similar to how the requirements were outlined in [Chula Vista Municipal Code section] 5.19.050 in that it was broken down into the four different sections. And then those four different sections, if the information was all found within that section and we didn't have to go through multiple sections to find the information, generally scored higher scores." As we will explain later in our discussion, Eaton also detailed how, for each of the four scoring categories, CVA received a lowered score because of how it formatted its applications.

In a written decision dated July 7, 2020, the City Manager granted the appeal. The City Manager explained that the parties agreed the fingerprint issue had been resolved,[9] and that he was overturning the Chief of Police's reliance on a crime of moral turpitude by one of CVA's principals as a basis for rejection because of the nature and temporal remoteness of the crime.[10] As to the rejection of CVA's applications due to the merit-based score of 339, the City Manager ruled as follows:

> "[CVA] received a total score of 339 out of 500 points on its application, which was not sufficient to move into a Phase 2 application slot for any of its three storefront applications. . . . The scores in each of the four categories were identical for each application: 84 points (out of 150) for Experience/Qualifications; 40 points (out of 50) for Liquid Assets; 95 points (out of 150) for Business Plan; and 120 points (out of 150) for Operating Plan. . . . Witness Matthew Eaton, of HdL, the City consultant firm that scored the applications, repeatedly testified that the basis for the scores was poor formatting and disorganization of the application, rather than the substance of the information submitted for each category. The Hearing Officer finds the scoring should be based solely on the City-established criteria around the applicant's qualifications and ability to operate a top-quality retail cannabis establishment, rather than application form. The Hearing Officer overturns this basis for the City's rejection and find[s] that [CVA] has met its burden by a preponderance of the evidence that this basis for rejection is erroneous. Accordingly, the Hearing Officer directs the City to reassess [CVA's] score without regard to the formatting or organization of the application, in conformance with this Statement of Decision, and to issue a new Notice of Decision,

[9] A clerical error caused the City to believe, erroneously, that CVA had not submitted all of the required fingerprints.

[10] The conviction at issue, which was incurred by a contingent two-percent owner of CVA, was a petty theft conviction from 1964 that had been expunged.

9

which shall be final and contain no right to appeal to the City Manager.  ([Regs., §] 0501[, subd. ](P)(4)(a)).”

On August 21, 2020, the Deputy City Manager sent a letter to CVA, which enclosed (1) a letter from Eaton describing his rescoring of CVA's applications; and (2) revised notices of decision from the Finance Director, rejecting CVA's applications in Council Districts One, Three and Four.

In his letter, Eaton stated, “As I testified in the hearing, the only evaluation criteria that received a deduction of points due to the way it was formatted and/or organized was *Relevant Experience / Qualifications of Cannabis Team*.”  Eaton then explained that he had reevaluated that category, with the result that “[CVA's] score for Relevant Experience/Qualifications of Cannabis Team raised from 84 points to 130 points.  [CVA's] Phase II application review overall score was changed from 339 points to 385 points.”  Eaton did not describe any effort to rescore the other three categories.

The revised notices of decision (for Council Districts One, Three and Four) stated, “This notice is issued pursuant to [Chula Vista Municipal Code] sections 5.19.050[, subd. ](A)(4) and 5.19.050[, subd. ](A)(6), and advises you that your application has been rejected.  The application has been rejected for the following reasons, any one of which is a lawful basis for rejection under City's laws and regulations:  [¶] ● [t]he provisional application score of 385 has failed to rank high enough to be given a Phase Two application slot for [the relevant] Council District.  ([Mun. Code, §] 5.19.050[, subd. ](A)(7) and [Regs.,] §0501[, subd. ](N)).”  The notices advised CVA that the rejection was final and could not be appealed to the City Manager.

Counsel for the City represented at oral argument that, to the best of his knowledge, the City has not yet issued any storefront retail cannabis

10

licenses in Council Districts One, Three and Four. Documents submitted by CVA show that subsequent to the City's denial of CVA's applications, all of the applicants for storefront retail licenses in Council District One that had been selected to participate in Phase Two either dropped out or were disqualified. The City then gave applicants *from Council District Two* the opportunity to fill Phase Two application slots *in Council District One*. As the City has confirmed, this was done pursuant to the Cannabis Regulations (Regs., § 0501, subd. (N)(2)(e)) because the City determined that all of the qualified applicants for Council District One had been eliminated, and therefore it looked to the highest scoring applicants from other Council Districts to fill open application slots in Council District One. Because the City rejected CVA's applications in Phase One, CVA was not in the running for any possible Phase Two application slots in any of the Council Districts.

C. *CVA's Petition and Complaint*

CVA initiated this litigation on September 22, 2020, by filing a petition and complaint against the City, in which it challenged the City's denial of its applications in Council Districts One, Three and Four (the Petition). The Petition pled four theories of relief against the City: (1) traditional mandamus (Code Civ. Proc., § 1085); (2) administrative mandamus (*id.*, § 1094.5); (3) declaratory relief; and (4) promissory estoppel. In the course of the litigation, however, CVA elected to proceed only on its claim for traditional mandamus, and it voluntarily dismissed the other three causes of action without prejudice.

With respect to the prayer for relief in traditional mandamus, the Petition sought an order that would, among other things, require the City to "reinstate CVA's Commercial Cannabis Business Applications [for Council

11

Districts One, Three and Four]," and to "comply with the City's ministerial duty to correctly rescore CVA's Commercial Cannabis Business Applications."

On January 11, 2021, CVA filed a motion for a peremptory writ of mandate. As relevant here, two of the grounds for relief set forth by CVA were that (1) the City failed to follow the Cannabis Ordinance and Cannabis Regulations when it rejected CVA's applications in Phase One solely on the ground that CVA had not scored high enough in the merit-based scoring process; and (2) the City had failed to follow the City Manager's directive to rescore CVA's applications to arrive at a score that was not lowered due to the formatting and organization of the applications.

On January 29, 2021, the trial court issued an order denying CVA's motion for a writ of mandate. The trial court made no factual findings and failed to explain why it concluded that CVA had failed to meet its burden.[11]

CVA filed a timely notice of appeal.[12]

---

[11] The trial court ruled, without further elaboration: "Petitioner [CVA's] Motion for Peremptory Writ is denied. Petitioner has not met its burden that writ relied if [sic] appropriate" The trial court also provided no explanation for its ruling during the hearing on CVA's motion.

[12] CVA filed two notices of appeal. The first was filed on March 1, 2021, after the trial court denied CVA's motion for a peremptory writ of mandate. That appeal was assigned Case No. D078720. The second was filed on June 30, 2021, after the trial court granted CVA's request to dismiss the remaining causes of action without prejudice. That appeal was assigned Case No. D079322. On September 9, 2021, we granted the parties' stipulation to consolidate the appeals.

II.

DISCUSSION

On appeal, CVA seeks an order requiring the trial court to issue a writ of mandate, pursuant to Code of Civil Procedure section 1085, directing the City to take the following actions: (1) to rescind its rejection of CVA's applications for storefront retail cannabis business licenses in Council Districts One, Three and Four; (2) to process those applications in accordance with the City's Cannabis Ordinance and Cannabis Regulations; and (3) to rescore those applications in their entirety (not just with respect to the Experience/Qualifications category) in compliance with the directive of the City Manager.

A. *Applicable Legal Standards*

We begin our discussion by reviewing the legal standards applicable to the issuance of a writ of mandate pursuant to Code of Civil Procedure section 1085.

A traditional writ of mandate will issue to "compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station" (Code Civ. Proc., § 1085), "where there is not a plain, speedy, and adequate remedy, in the ordinary course of law" (*id*., § 1086). As relevant here, "[t]he writ will issue against a county, city or other public body or against a public officer." (*County of Los Angeles v. City of Los Angeles* (2013) 214 Cal.App.4th 643, 653 (*County of Los Angeles*).) "What is required to obtain writ relief is a showing by a petitioner of '(1) A clear, present and usually ministerial duty on the part of the respondent . . . ; and (2) a clear, present and beneficial right in the petitioner to the performance of that

13

duty.' " (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539-540.)

Two different circumstances in which writ relief may be issued are potentially relevant here. (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 344 ["mandamus may issue to compel the performance of a ministerial duty or to correct an abuse of discretion" (fn. omitted)]; *County of Los Angeles, supra,* 214 Cal.App.4th at p. 653 ["Code of Civil Procedure section 1085 permits judicial review of ministerial duties as well as quasi-legislative and legislative acts."].) We discuss each in turn.

First, "[a] court may issue a writ of mandate to compel a public agency or officer to perform a mandatory duty. [Citation.] 'This type of writ petition "seeks to enforce *a mandatory and ministerial duty* to act on the part of an administrative agency or its officers." ' [Citation.] ' "[T]he writ will not lie to control discretion conferred upon a public officer or agency." ' " (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 914 (*Collins*), italics added.) Under this theory of relief, "[m]andamus may issue . . . to compel an official both to exercise his discretion (if he is required by law to do so) and to exercise it under a proper interpretation of the applicable law." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442 (*Common Cause*).)

Often, the crucial issue when the petitioner seeks such relief is whether the act that the petitioner seeks to compel is a *mandatory and ministerial* duty, or, on the contrary, is a *quasi-legislative and discretionary* act. " ' "[I]n most cases, the appellate court must determine whether the agency had a ministerial duty capable of direct enforcement or a quasi-legislative duty entitled to a considerable degree of deference. This question is generally subject to de novo review on appeal because it is one of statutory interpretation, a question of law for the court." ' " (*Collins, supra,* 41

14

Cal.App.5th at pp. 914-915.) " 'A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists.' " (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.) "A public entity has a ministerial duty to comply with its own rules and regulations where they are valid and unambiguous." (*Gregory v. State Bd. of Control* (1999) 73 Cal.App.4th 584, 595 (*Gregory*).)

Second, a court may issue a writ when a public agency has abused its discretion in carrying out a *discretionary* function. "Although traditional mandamus will not lie to compel the exercise of discretion in a particular manner, it is a proper remedy to challenge agency discretionary action as an abuse of discretion." (Asimow et al., Cal. Practice Guide: Administrative Law (The Rutter Group 2022) ¶ 13.90.) "That mandate will lie whenever an administrative board has abused its discretion is a rule so well established as to be beyond question." (*Manjares v. Newton* (1966) 64 Cal.2d 365, 370; see also *Common Cause*, *supra*, 49 Cal.3d at p. 442 ["mandamus will lie to correct an abuse of discretion by an official acting in an administrative capacity"].) "Mandamus may . . . issue to correct the exercise of discretionary legislative power, but only where the action amounts to an abuse of discretion as a matter of law because it is so palpably unreasonable and arbitrary." (*Ellena v. Dept. of Ins.* (2014) 230 Cal.App.4th 198, 206 (*Ellena*).)

"When a court reviews a public entit[y's] decision for an abuse of discretion, the court may not substitute its judgment for that of the public entity, and if reasonable minds may disagree as to the wisdom of the public entity's discretionary determination, that decision must be upheld. [Citation.] Thus, the judicial inquiry . . . addresses whether the public

15

entity's action was arbitrary, capricious or entirely without evidentiary support, and whether it failed to conform to procedures required by law." (*California Public Records Research, Inc. v. County of Stanislaus* (2016) 246 Cal.App.4th 1432, 1443 (*California Public Records Research*).) "Where only one choice can be a reasonable exercise of discretion, a court may compel an official to make that choice." (*California Correctional Supervisors Organization, Inc. v. Department of Corrections* (2002) 96 Cal.App.4th 824, 827 (*California Correctional Supervisors*).) "Deferential review of quasi-legislative activity minimizes judicial interference in the interests of the separation of powers doctrine." (*County of Los Angeles, supra,* 214 Cal.App.4th at p. 654.)

With respect to both theories of writ relief, "[w]hen an appellate court reviews a trial court's judgment on a petition for a traditional writ of mandate, it applies the substantial evidence test to the trial court's findings of fact and independently reviews the trial court's conclusions on questions of law, which include the interpretation of a statute and its application to undisputed facts." (*California Public Records Research, supra,* 246 Cal.App.4th at p. 1443.) Here, the trial court made no factual findings, and the relevant facts are undisputed. We accordingly apply a de novo standard of review. (*California Correctional Supervisors, supra,* 96 Cal.App.4th at p. 827 [in reviewing a petition for traditional mandamus, " 'the appellate court may make its own determination when the case involves resolution of questions of law where the facts are undisputed' "].)

B.  *The City Failed to Follow Its Ministerial and Mandatory Duty to Follow Its Own Procedures When It Rejected CVA's Applications in Phase One for Failure to Score High Enough*

CVA's first contention is that the City failed to follow a mandatory and ministerial duty when it rejected CVA's applications in Phase One on the

16

ground that CVA did not score high enough in the merit-based scoring process.[13]  According to CVA, neither the Cannabis Ordinance nor the Cannabis Regulations permit the City to disqualify an applicant during Phase One for not scoring high enough.  On the contrary, the Cannabis Ordinance and the Cannabis Regulations *require* that the City deem an applicant to be qualified if it meets the stated minimum requirements, which do *not* include any merit-based scoring requirement.  CVA's argument has merit.

As we have explained, the Cannabis Ordinance clearly sets out a two-phase application process.  In Phase One, an applicant must submit an application establishing certain minimum qualifications.  (Mun. Code, § 5.19.050, subd. (A).)  The Finance Director and the Police Chief review the application to ensure it meets the minimum qualifications and that the applicant has passed the required background checks, but they have no discretion to reject an application during Phase One if it meets the minimum requirements.  (*Id.*, § 5.19.050, subds. (A)(4) ["The Phase One Application shall be reviewed by the Finance Director for completeness and to determine if City's *minimum* City License qualifications have been satisfied" (italics added)], (A)(5) ["applications accepted by the Finance Director as minimally qualified shall be forwarded to the Police Chief for review and completion of

---

13    CVA deduces from the list of applicants who were rejected during Phase One that the City set a 400-point threshold for applicants to survive the Phase One review process.  The City claims that it did not employ a 400-point threshold, and that "[t]he highest scoring applications just happened to exceed 400 and received an interview for Phase Two."  We need not resolve that factual issue to decide this appeal, as it is undisputed that the City rejected CVA's applications during Phase One based on its determination that CVA did not rank "high enough," *regardless* of whether it chose 400 points as a qualifying threshold score.

17

any and all required background checks"].)  According to the Cannabis Ordinance, "Applicants who are approved by the Finance Director and Police Chief under the Phase One Application process, or by the City Manager upon appeal, shall be *deemed qualified* to submit a Phase Two Application."  (*Id.*, § 5.19.050, subd. (A)(7), italics added.)  The parties do not dispute that CVA met all the minimum requirements and passed its background checks. Therefore, CVA should have been *deemed qualified* to proceed to Phase Two of the application process.

Under the Cannabis Ordinance, only *after* the Phase One application process is completed and applicants have either been deemed qualified or unqualified to submit a Phase Two application, does the City's merit-based scoring process become relevant.  "If the number of deemed 'qualified' Phase One Applicants . . . exceeds the number of available City Licenses . . . , a merit-based system established by the City shall be used to determine which of the qualified Applicants is invited to submit a Phase Two Application." (Mun. Code, § 5.19.050, subd. (A)(7).)

The Cannabis Regulations provide detailed guidelines governing how qualified applicants are to be selected to fill open Phase Two application slots, including the use of a merit-based scoring process.  (Regs., § 0501, subd. (N)(2).)  Under the Cannabis Regulations, regardless of a qualified applicant's merit-based score, a qualified applicant for a storefront retail license will *remain eligible* for a Phase Two application slot until *all* of the storefront retail licenses have been issued in *each* of the four Council Districts.  Only at the *end* of this process, when all of the storefront retail licenses are issued, is a qualified applicant to be informed that its application has been rejected because it did not score high enough to receive a Phase Two application slot. (*Id.*, § 0501, subd. (N)(3) ["[o]nce the Phase One selection process for all

18

Council Districts is complete, any remaining unselected qualified applicants will be sent a Notice of Decision."].)

Further, under the Cannabis Regulations, the City is required to exhaust all of the qualified applicants *in a particular Council District* before taking qualified applicants from *a different Council District* to fill a Phase Two application slot. (Regs., § 0501, subds. (N)(2)(c) ["Once a Council District has reached the maximum number of retailer license applications allowed, only the remaining qualified applications for the unfilled Council Districts will be used to select for the remaining licenses *in those unfilled Council District*[*s*]" (italics added)], (N)(2)(e) ["Should qualified applications for unfilled Council Districts *be exhausted*, any remaining unselected, qualified applications for filled Council Districts will be placed in rank order based on their aggregate score. The highest ranked remaining qualified application . . . will be offered the opportunity to select a site within the unfilled Council District" (italics added)].)

Neither the Cannabis Regulations nor the Cannabis Ordinance provide the City with any discretion in deciding whether to follow the procedures for (1) deeming applicants to be qualified in Phase One; and (2) filling open application slots in Phase Two. Therefore, the City has a mandatory and ministerial duty to follow those procedures. (*Ellena, supra,* 230 Cal.App.4th at p. 205 [" ' "[W]here a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion." ' "].)

The City argues that CVA challenges only *discretionary* decisions by the City rather than the City's failure to perform *a mandatory and ministerial* duty. We reject the City's argument because it confuses the procedures *required* by the Cannabis Ordinance and Cannabis Regulations

19

with the *discretionary* merit-based scoring the City undertakes as part of its decision process. The City's merit-based scoring of an application is clearly a discretionary function, as we will explain at more length in Section II.C, *post*. However, the City's consideration of an application also contains many mandatory procedures that the City is required to follow. It is those procedures that are at issue here and that give rise to the mandatory and ministerial duty of the City.

The City plainly did not follow its own mandatory procedures. Although it is undisputed that CVA met the minimum requirements in its Phase One applications and passed its background checks, the City did not classify CVA as being *deemed qualified* to participate in Phase Two. Instead, the City *rejected* CVA's applications in Phase One. The reason that the City gave for the rejection was that CVA failed to rank high enough on the merit-based scoring. However, that is not a permissible basis on which the City may reject an applicant in Phase One. As a result, CVA was wrongly precluded from staying in the running to obtain a Phase Two application slot under the procedures set forth in the Cannabis Regulations. (Regs., § 0501, subd. (N)(2).)

In Council District One in particular, the City's failure to follow its own procedures negatively impacted CVA's chances of obtaining a Phase Two application slot. As we have explained, the City took applicants from other Council Districts to fill the application slots in Council District One because there were no other qualified storefront applicants left in Council District One. Under the City's own procedures, CVA should have been deemed qualified in Phase One and should have remained in the running for any open application slots in Council District One before those application slots were offered to applicants from other Council Districts.

The City's failure to follow its own procedures provides the basis for the issuance of a traditional writ of mandate. (*Gregory*, *supra*, 73 Cal.App.4th at p. 595; see also *Drummey v. State Bd. of Funeral Directors and Embalmers* (1939) 13 Cal.2d 75, 83 ["where a statute requires an officer to do a prescribed act upon a prescribed contingency, his functions are ministerial, and upon the happening of the contingency the writ may be issued to control his action"].) "We can . . . direct an agency to follow its own rules when it has a ministerial duty to do so." (*Pozar v. Dept. of Transportation* (1983) 145 Cal.App.3d 269, 271.) We will therefore direct the trial court to issue a writ of mandate requiring the City to (1) to rescind its rejection of CVA's applications for storefront retail cannabis business licenses in Council Districts One, Three and Four; and (2) to process those applications in accordance with the City's Cannabis Ordinance and Cannabis Regulations. In processing CVA's applications in accordance with the applicable procedures in the Cannabis Ordinance and Cannabis Regulations (1) the City shall not rely on CVA's merit-based score in determining whether CVA is deemed qualified to submit a Phase Two Application; and (2) in each particular Council District, the City shall exhaust all of the qualified applicants from that particular Council District before issuing a license for a particular Council District to applicants from other Council Districts.

C. *The City Acted in an Arbitrary and Capricious Manner in Failing to Rescore All Four Categories in Its Merit-Based Scoring of CVA's Applications*

CVA next seeks an order requiring the City to rescore *the entirety* of its applications in response to the City Manager's decision granting CVA's administrative appeal. Specifically, CVA contends that the City should not have limited its rescoring effort to the Experience/Qualifications category but rather should have reexamined the score for *all four* of the categories.

We must first determine the scope of our review. The City's act of assigning a score to an applicant for a cannabis business license is a quasi-legislative discretionary function, not a ministerial act. " 'A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists. Discretion, on the other hand, is the power conferred on public functionaries to act officially according to the dictates of their own judgment.' " (*County of Los Angeles, supra,* 214 Cal.App.4th at pp. 653-654.) In deciding what merit-based score to assign to an applicant, the City indisputably exercises discretion and judgment, and there are no binding rules requiring that any particular score be given in any particular circumstance. As the City was engaged in a discretionary act when it undertook to rescore CVA's applications pursuant to the City Manager's decision granting CVA's appeal, we are limited to reviewing that act to determine whether it was "arbitrary, capricious or entirely without evidentiary support, and whether it failed to conform to procedures required by law." (*California Public Records Research*, *supra*, 246 Cal.App.4th at p. 1443.)

Here, as we will explain, the City acted in an arbitrary and capricious manner in rescoring CVA's applications because it limited its efforts to only one of the four relevant categories. The Cannabis Regulations state that applicants will be scored based on "*a.* Experience/Qualifications of the business owner/team (150 points) [¶] *b.* Liquid Assets (50 points) [¶] *c.* Business Plan (150 points) [¶] *d.* Operating Plan (150 points)." (Regs., § 0501, subd. (N)(1).) At the administrative hearing Eaton testified that for *each* of these four categories, CVA's score was lowered because of how it

22

formatted and organized its applications, as shown by the following portions of Eaton's testimony.

First, with respect to the Experience/Qualifications score, Eaton explained that CVA "did not receive a score of outstanding as a result of the manner and location in which we had to search to find all of the required details."

Second, with respect to the Liquid Assets score, Eaton stated, "There's no doubt that the applicant has funds. . . . But in order to receive an outstanding, a score representing outstanding, *we would have expected that this information be all found in one location*, and that they would have at least the amount of start-up funds to match the self-reported start-up expenses that they reported in their income statement sheet." (Italics added.)

Third, with respect to the Business Plan score, Eaton was asked the following question by CVA's representative at the hearing: "My question is too, some of the marketing plans were included in the actual operations plan. Is it because they were—was putting it in the operations plan detrimental to us in the business plan scoring?" Eaton replied, "It is the reason why you scored slightly lower, yes." In this regard, Eaton also stated that he "would have expected [a] more clear and concise outline of the abilities and considerations of the market."

Finally, with respect to the Operating Plan score, Eaton stated, "[Y]ou were one point off, it appears, on each of the criteria. And applicants that scored higher tended to present the information all in one location, and it would be as—the same reason for all the other reasons. A lot of the detail had to be collected throughout the entire application instead of solely in that business plan that was being scored and evaluated."

23

Based on this testimony, as well as Eaton's repeated general statements that applicants were scored based on formatting and organization, the City Manager directed that CVA's applications be rescored "without regard to the formatting or organization of the application." The City Manager did not limit this directive to any one of the four categories. Indeed, the City Manager observed that Eaton "repeatedly testified that the basis for the *scores* was poor formatting and disorganization of the application, rather than the substance of the information submitted for each category." (Italics added.)

Nevertheless, in his letter explaining the rescoring process, Eaton stated that he had rescored *only* the Experience/Qualifications category, resulting in an overall score increase from 339 to 385. His stated reason for limiting the rescoring to only one category was the following: "As I testified in the hearing, the only evaluation criteria that received a deduction of points due to the way it was formatted and/or organized, was *Relevant Experience/Qualifications of Cannabis Team*."[14]

Eaton's express reason for limiting the rescoring to only one category is contradicted by his own clear testimony at the administrative hearing that all four categories were impacted by the formatting and organization of CVA's applications. Eaton's testimony compels the conclusion that rescoring *each* of the four categories was warranted. We therefore conclude that the City's decision to limit its rescoring of CVA's applications to only one of the four categories was "arbitrary, capricious," and was also "entirely without

---

14    The City contends that the record shows that Eaton *did* rescore all of the categories, but that the results were simply the same as the original score in three of the categories. We reject the City's characterization of the evidence because it directly conflicts with the content of Eaton's letter.

evidentiary support." (*California Public Records Research, supra*, 246 Cal.App.4th at p. 1443.) Moreover, to the extent the City's actions contravened the City Manager's directive "to reassess [CVA's] score without regard to the formatting or organization of the application," the City also "failed to conform to procedures required by law." (*Ibid*.) CVA has accordingly met its burden to establish that the City abused its discretion in conducting the merit-based scoring of CVA's applications.

Based on our authority to order relief in traditional mandamus when a public agency has abused its discretion in carrying out a discretionary duty (*Common Cause, supra*, 49 Cal.3d at p. 442), we will direct the trial court to issue a writ of mandate requiring the City to exercise its discretion to rescore all four categories of CVA's applications in Council Districts One, Three and Four without regard to the formatting or organization of the applications in compliance with the directive of the City Manager.

D.    *CVA Does Not Have an Adequate Legal Remedy*

The City contends that writ relief is not available to CVA because it has an adequate remedy in law.

"Section 1086 of the Code of Civil Procedure provides that the writ of mandate 'must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' Although the statute does not expressly forbid the issuance of the writ if another adequate remedy exists, it has long been established as a general rule that the writ will not be issued if another such remedy was available to the petitioner. [Citations.] The burden, of course, is on the petitioner to show that he did not have such a remedy." (*Phelan v. Superior Court of San Francisco* (1950) 35 Cal.2d 363, 366, fn. omitted.) " ' " 'The question whether there is a "plain, speedy and adequate remedy in the ordinary course of law," within the meaning of the statute, is one of fact, depending upon the circumstances of each particular

25

case, and the determination of it is a matter largely within the sound discretion of the court . . . [.]' " [Citation.]' . . . If it is clear, however, that mandate is the only remedy that can furnish the relief to which the petitioner is entitled, the discretion disappears and the petitioner is entitled to the writ." (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 206, citation omitted.)

The City contends that CVA has an adequate remedy at law because it pled a cause of action for promissory estoppel in the Petition. According to the City, "By seeking monetary damages through a legal claim for promissory estoppel, CVA admitted that it has an adequate legal remedy and would not be entitled to mandamus relief." The City's argument lacks merit.

CVA's promissory estoppel cause of action sought recovery of the application expenses that CVA lost when the City rejected its applications. The Petition stated, "CVA expended time, money and resources in preparing and submitting its applications for the City Licenses. CVA's application preparation costs are currently unknown and are according to proof at trial, but are in an amount that exceeds the jurisdictional limit of this Court. CVA suffered damages by virtue of its reliance on the City's promise and the City's breach of that promise, and CVA is entitled to reliance damages together with interest at the maximum legal rates allowed by law. Notably, this is an inadequate legal remedy for CVA as it has no ability to recover its expectation damages created by the City's unlawful conduct." Recovery of CVA's application costs is not an adequate remedy for the City's failure to follow its procedures for the issuance of licenses for cannabis retail businesses, as that remedy would not give CVA the relief it seeks through traditional mandamus: a chance to compete for and be awarded a license.

We therefore conclude that CVA has met its burden to establish that it does not have an adequate legal remedy and that writ relief is appropriate.

E. *The City Has Not Established That Any Indispensable Parties Are Absent from This Action*

The City contends that relief in traditional mandamus is not available to CVA in this litigation because CVA has failed to join indispensable parties. The City raised this issue as one of the grounds for opposing writ relief in the trial court, but the trial court did not specifically rule on the issue.

"Code of Civil Procedure section 389 governs joinder of parties in a civil action. . . . A person subject to service of process whose joinder will not deprive the court of subject matter jurisdiction 'shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.' ([Code Civ. Proc.,] § 389, subd. (a).) The inquiry under clause (a)(2), applicable here, is 'whether the person is one whose rights must necessarily be affected by the judgment in the proceeding.' " (*Pinto Lake MHP LLC v. County of Santa Cruz* (2020) 56 Cal.App.5th 1006, 1013 (*Pinto Lake*).)

"If a necessary person cannot be joined as a party, the trial court considers specific factors to 'determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable.' ([Code Civ. Proc.,] § 389, subd. (b).) Those factors are: '(1) to what extent a judgment rendered in the person's absence might be prejudicial to him or

27

those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder.' (*Ibid.*)" (*Pinto Lake*, *supra*, 56 Cal.App.5th at pp. 1013-1014.)  A court must "weigh practical realities and other considerations in determining whether a person is necessary or indispensable." (*Id*. at p. 1014.)

The City contends that all of the other applicants who "scored higher than CVA and advanced to Phase Two" are indispensable parties because the relief sought by CVA would "prejudice[ ]" them.  We reject the City's argument.  As CVA points out, the relief it seeks in this appeal is limited to an order directing the City to (1) rescind its rejection of CVA's applications and thereafter process them in accordance with the Cannabis Ordinance and Cannabis Regulations, and (2) rescore the entirety of CVA's applications in compliance with the directive of the City Manager.  Those actions will not prejudice the rights of any other applicants, who, like CVA will simply be judged under the same standards that the City will be ordered to apply to CVA.[15]  We therefore conclude that no parties need be joined in this action prior to granting CVA the relief it seeks.

---

[15]    In the trial court, the relief sought by CVA included an order requiring the City, to the extent it has already issued any storefront retail cannabis business licenses in Council Districts One, Three and Four, "to declare that such licenses are null and void."  However, the scope of the order that CVA seeks on appeal does not encompass that relief.  Moreover, the City has not yet issued any storefront retail cannabis business licenses in Council Districts One, Three and Four.  Therefore, this case is not like the opinion cited by the City to support its argument, in which a party who was already issued valid permits was determined to be an indispensable party in an

DISPOSITION

The judgment is reversed. This matter is remanded to the trial court with instructions to issue a writ of mandate directing the City to (1) rescind its rejection of CVA's applications for storefront retail cannabis business licenses in Council Districts One, Three and Four; (2) process CVA's applications in accordance with the City's Cannabis Ordinance and Cannabis Regulations, which shall include (a) not relying on CVA's merit-based score in determining whether CVA is deemed qualified to submit a Phase Two Application, and (b) exhausting all of the qualified applicants from each particular Council District before issuing a license in that particular Council District to an applicant from another Council District; and (3) rescore CVA's applications for storefront retail cannabis business licenses in Council Districts One, Three and Four in their entirety (not just with respect to the Experience/Qualifications category) without regard to the formatting or organization of the applications in compliance with the directive of the City Manager. CVA shall recover its costs on appeal.

---

action seeking to cancel those permits. (*Greif v. Dullea* (1944) 66 Cal.App.2d 986, 993-994 [taxi operator was an indispensable party because the relief sought would result in cancelling permits to operate its taxis].)

                                        IRION, J.

WE CONCUR:


O'ROURKE, Acting P. J.


AARON, J.

Filed 8/15/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CV AMALGAMATED LLC, | D078720 & D079322 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2020-00033446-CU-MC-CTL) |
| CITY OF CHULA VISTA, | |
| Defendant and Respondent. | ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed July 19, 2022, and as modified August 12, 2022, was not certified for publication. The court has received a request to publish the opinion. (Cal. Rules of Court, rule 8.1120(a).)

It appearing the opinion, as modified, meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion, as modified, meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion, as modified, herein be published in the Official Reports.

O'ROURKE, Acting P. J.

Copies to:  All parties